UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA *ex rel.,*          CASE NO.  19-61053-CIV-DIMITROULEAS
VERONICA N. ARVEN AND
 ESTATE OF THEODORE
ARVEN, III,

        Relators,

vs.

THE FLORIDA BIRTH-RELATED NEUROLOGICAL INJURY
COMPENSATION ASSOCIATION AND THE FLORIDA
BIRTH-RELATED NEUROLOGICAL INJURY
COMPENSATION PLAN,

        Defendants.
_____/

## ORDER DENYING DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

THIS CAUSE is before the Court on Defendants' Florida Birth-Related Neurological Compensation Plan ("Plan") and the Florida Birth-Related Neurological Injury Compensation Plan ("NICA") February 26, 2020 Motion to Dismiss the Amended Complaint.  [DE-34].  The Court has considered Relators' ("Arven") March 23, 2020 Response [DE-39], Defendants' April 6, 2020 Reply [DE-43], the Government's April 30, 2020 Statement of Interest [DE-52], Defendants' June 10, 2020 Response to Statement of Interest [DE-60], a December 15, 2014 letter from CMS [DE-61-1] and Defendants' June 26, 2020 Notice of Supplemental Authority [DE-62]. The Court is otherwise fully advised in the premises.

## I.      BACKGROUND

This is a non-intervened *qui tam* action under the False Claims Act (FCA) against the Florida Birth-Related Neurological Compensation Plan (Plan) and its administrator, the Florida Birth-

1

Related Neurological Injury Compensation Association (NICA).   The Court has reviewed the complaint's allegations. The Amended Complaint alleges pertinent facts in the following paragraphs:

¶1.   Realtors Veronica ("Roni") N. Arven and the Estate of Theodore Arven, III, brought an Amended Complaint on September 9, 2019 on their own behalf as well as on behalf of the United States pursuant to the qui tam provisions of the federal False Claims Act (31 U.S.C. § 3729 et seq) against the Florida Birth-Related Neurological Injury Compensation Association ("the Florida Association") and the Florida Birth-Related Neurological Injury Compensation Plan ("the Florida Plan") (collectively, "NICA").

¶12.   The Florida Association and Plan each qualify as a "person" as that term is defined by the federal False Claims Act.  Pursuant to §§ 766.303(3) and 766.31 *Fla. Stat.,* the Florida Association and Plan are properly subject to a federal False Claims Act lawsuit for causing participants to submit false claims for payment to Medicaid for care and services covered and payable by NICA.

¶39.   The State of Florida is a participant in the federal Medicaid program.  The Florida Medicaid program is administered by the Florida Agency for Health Care Administration ("AHCA").

¶40.   The Florida Legislature enacted the Medicaid Third-Party Liability Act, which provides: "Medicaid [is] the payor of last resort for medically necessary goods and services furnished to Medicaid recipients.  All other sources of payment for medical care are primary to medical assistance provided by Medicaid." Fla. Stat. § 409.910(1); see also Fla. Stat. § 409.910(2) ("Third-party benefits for medical services shall be primary to medical assistance provided by Medicaid").

¶41.   Florida Medicaid recipients must inform AHCA of third-parties that are potentially liable for the health care claims.

¶42.   In the initial application for Florida Medicaid benefits, Floridians must disclose all third-party sources of health coverage or health insurance benefits.

¶43.   Third-party payer information is documented in the individual's Medicaid file and added to the Florida Medicaid Management Information System ["FMMIS"].  FMMIS is utilized when processing Medicaid claims to avoid payment of claims for which a third-party is liable.

¶44.   When a Medicaid recipient is treated by a health care provider, the provider presents a claim for payment to AHCA on behalf of the recipient.  The claim is routed through FMMIS, which instructs the provider to bill the identified third-parties prior to submitting a claim to Medicaid.  If the provider resubmits the Medicaid claim, AHCA pays the balance, which represents the difference between the total third-party liability and the full amount of the claim, subject to Medicaid's rate schedule.

¶45.   AHCA Medicaid payments are comprised of federal, state and local funds.  For example, in 2017, the Florida Medicaid program was funded with approximately 61% federal funds and 39% funds from the state and local governments or taxes on health care providers such as hospitals and nursing homes.  Therefore, approximately $0.61 of every dollar paid by AHCA represents federal funds.

¶46.   Medicaid recipients' obligation to disclose third party sources of health insurance coverage or benefits is continuing in nature.  Medicaid applicants and recipients must inform AHCA of any entity that is or may be liable to provide third-party benefits.

¶47.  Consistent with federal law, AHCA is required to seek reimbursement from a third-party once it learns of a previously unknown third-party benefit, or when third-party benefits are discovered or become available after payment of a Medical claim.  See Fla. Stat. § 409.910(4).

¶48.  Florida law grants AHCA certain rights to recover third-party benefits, including (i) the right of subrogation against the third-party to recover the full amount of the Medicaid claim; (ii) the assignment of a Medicaid participant's right, title, and interest in any third-party benefit; and (iii) an automatic lien for the full amount of the Medicaid claim.  See Fla. Stat. § 409.940(6).

¶49.  Third-parties also have certain duties when providing health care benefits to Medicaid participants - - including, but not limited to, the duty to inquire with AHCA when they have knowledge or are on notice of a person's participation in Medicaid within one year of the date of the health care giving rise to the claim.  See e.g., Fla. Stat. § 409.940(6)(c)(7).

¶50.  The foregoing creates an obligation on the part of third-parties to repay AHCA for Medicaid funds that were the third-parties' responsibility but were paid by Medicaid.

¶51.  When AHCA receives reimbursement from a third-party for a Medicaid claim, AHCA has to repay the United States its pro rata share.  See 42 C.F.R. § 433.140(c).  For example, in 2017, AHCA must pay the United Sates 61% of each third-party reimbursement.

¶52.  The Florida Association is an independent entity created by Florida Statute in 1988 for the purposes of administering the Florida Plan.  See Fla. Stat. § 766.303, et seq.

¶53.  The Florida Plan provides compensation for children who sustain mentally and physically disabling neurological injuries at birth.

¶54.  To be awarded compensation, a petition must be filed on behalf of the injured child with the Florida Division of Administrative Hearings.  See Fla. Stat. § 766.305(1).  Within ten days of filing the petition, the Florida Association must be furnished with all available relevant

medical records; assessments, evaluations, and prognoses; "documentation of expenses and services incurred to date which identifies any payment made for such expenses and services and the payor'" and "documentation of any applicable private or government source of services or reimbursement relative to the impairments." Fla. Stat. § 766.305(A).  An administrative law judge sets the matter over for a hearing up to 120 days from the filing of the petition, at which time the judge determines the compensability of the child's injury and the amount of compensation, if any, awardable under the Florida Plan.  *See,* Fla Stat. §766.307(1), Fla. Stat §766.309.

¶55.  An award under NICA indicates (a) the actual expenses for medically necessary and reasonable treatment related to the injury, as well as a death benefit of $10,000; and (c) expenses in connection with filing a claim.  See Fla. Stat. § 766.31 (1).  The award requires "the immediate payment of expenses previously incurred and shall require that future expenses be paid as incurred."  Fla. Stat. § 766.31(2).

¶56.  NICA will not cover any items or services for which the injured child has received or is entitled to receive payment or reimbursement "under the laws of any state or the Federal Government, except to the extent such exclusion may be prohibited by federal law."  Fla. Stat. § 766.31(1)(a)(1, 3).

¶57.  The exclusion of Medicaid eligible items or services from payment by NICA is prohibited by federal law.

¶59.  NICA's September 3, 2015 statement of plan policy declares that the Florida Plan "is the payor of last resort; that is, the Plan pays after available insurance or governmental programs have paid for such medically necessary and reasonable expenses." *See* NICA, Benefit Handbook, at 3, attached hereto at Exhibit B.

5

¶ 63.   NICA admitted to its external auditors that Medicaid has been paying for NICA-covered services. NICA's audited financial statements for fiscal years 2016 and 2017 report: "Since the payments made by Medicaid reduce the amounts that would be paid by NICA otherwise, any change in the portion of benefits covered by Medicaid could impact NICA's loss and loss adjustment expenses." Florida Birth-Related Neurological Injury Compensation Ass'n, Financial Statements, Years Ended June 30, 2017 and 2016, at 6, attached hereto as Exhibit C. Despite this admission, and an explicit recognition that it could be a "liable third party to Medicaid," Exhibit, C, at 6, NICA did not self-report or disclose to the federal government that it caused participants to submit false claims to Medicaid.

¶66.   NICA is a third-party under 42 C.F.R. § 433.136.

¶67.   When a neurologically birth-injured child is awarded NICA benefits, however, NICA does not ensure that Medicaid's lien is repaid.

¶68.   Instead, NICA instructs participants that (i) NICA is not a third-party for purposes of Medicaid; (ii) it need not repay Medicaid's lien; and (iii) that the Medicaid lien is "withdrawn".

## II.   **STANDARD OF LAW**

Under Rule 12(b)(6), a motion to dismiss should be granted if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  When determining whether a claim has facial plausibility, "a court must view a

complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

Rule 9(b) of the Federal Rules of Civil Procedure provides that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (internal quotations omitted).

"In analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Court may also consult documents that are attached to the motion to dismiss under the "incorporation by reference" doctrine, "under which a document attached to a motion to

dismiss may be considered by the court without converting the motion into one for summary judgment … if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002) (internal citations omitted). *See also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997).

## III.   DISCUSSION

Defendants move to dismiss this FCA complaint on several grounds,[1] including that they are not a third-party, did not act knowingly, and have Eleventh Amendment immunity. Additionally, they contend that the Plan is not a proper defendant.[2] **First**, Defendants' primary complaint concerns NICA's not qualifying as a person under FCA.  *Vermont Agency of Natural Resources ex rel Stevens*, 529 U.S. 765 (2000). Only "person[s]" are subject to the FCA's liability provision. *Id.* at 781. The United States Supreme Court has held that states are not included in the term "person" for the purpose of *qui tam* liability. *Id.* at 787. As such, a realtor cannot bring FCA claims against states or agencies acting as arms of the state. *U.S. ex rel Lesinski v. S. Fla. Mgmt. Dist.,* 739 F. 3d 598, 601-02 (11th Cir. 2012).

We use the Eleventh Amendment "arm of the state" analysis to determine whether an entity is a "person" subject to False Claims Act liability.[3] *U.S. ex rel Lesinski v. S. Fla. Mgmt.*

---

[1] On March 17, 2020, the United States filed a Notice [DE-37] stating that it opposed dismissal under the Public Disclosure Bar.  The FCA's public disclosure section, 31 U.S.C. § 3730(e)(4)(A) as amended in 2010, "provides that the government can oppose dismissal, allowing the case to proceed even if the public disclosure provision would otherwise apply." *See U.S. ex rel. Osheroff v. Humana, Inc.,* 776 F. 3d 805, 810-11 (11th Cir. 2015).  As such, Defendants arguments in favor of dismissal under the public disclosure bar are moot. At this time, the Court need not decide the retroactive effect of the amendments to 31 U.S.C. § 3730(e)(4)(A) pre-March 2010.

[2] The Court agrees with Plaintiff that the Plan is a necessary party in order to afford complete relief, Rule 19(a)(1)(A), Fed. R. Civ. Proc.. Moreover, the statute's providing that NICA can be sued does not necessarily mean that the Plan cannot.  Certainly, the Plan has been sued. *Coy v. Fla. Birth-Related Neurological Injury Comp. Plan,* 595 So. 2d 943 (1992); *McGibony v. Fla. Birth-Related Neurological Injury Comp. Plan,* 564 So. 177 (Fla. 1st DCA 1990). Paragraph 59 of the complaint discusses the Plan.

[3] Given that the Court uses the Eleventh Amendment "arm of state" analysis and the "virtual coincidence of scope," *Vermont Agency of Nat. Res.,* 529 U.S. at 780 (2000), between the statutory analysis and the Eleventh Amendment

*Dist.,* 739 F. 3d 598, 601-02 (11th Cir. 2012).  An "arm of the state" includes state agencies and

other arms of the state. *Cassidy v. Hall*, 892 F. 3d 1150, 1153 (11th Cir. 2018). "Arm of the state"

status depends on the entities level of independence from the state. *Versiglio v. Board of Dental*

*Examiners of Ala.,* 686 F. 3d 1290, 1292 (11th Cir. 2012). Water management districts,

community colleges and state universities are considered arms of the state, *Lesinski,* at 603;

*Williams v. District Board of Trustees of Edison Comm. College,* 421 F. 3d 1190, 1193 (11th Cir.

2005); *Univ of South Florida Board of Trustees v. CoMentis, Inc.,* 861 F. 3d 1234, 1235-37 (11th

Cir. 2017).  Counties, municipalities and school boards are not considered arms of the state.

*Regents of the Univ. of Cal. v. Doe,* 519 U.S. v. 425, 429 n. 5 (1997).

 In determining whether an entity is an "arm of the state", the Eleventh Circuit suggests

that the court consider four factors: "(1) how state law defines the entity; (2) what degree of

control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is

responsible for judgments against the entity." *Manders v. Lee*, 338 F. 3d 1304, 1309 (11th Cir.

2003).  Both parties argue different facts to support their positions as to the applicability of each

factor.

### A.  How the State Defines the Entity

Plaintiff points out that F.S. § 766.315(1)(a) states that NICA is not a state agency, board

or commission.  However, it is authorized to use the state seal.[4]  Both parties support their

position by claiming that Sovereign Immunity is waived solely to the extent necessary to assure

payment of compensation as awarded by an administrative law judge.  F.S. § 766.303(3).

Plaintiffs also contend that unlike water management districts, and colleges, NICA was not

---

analysis, the Court addresses whether NICA is a person under the FCA its immunity from suit under the Eleventh
Amendment simultaneously.
[4] The Court is unaware of NICA's actually using the state seal.

designed to perform a state function.  NICA's purpose was to provide exclusive no-fault compensation for birth-related neurological injuries to infants, *Florida Birth-Related Neurological Comm. Assoc. v, Florida Div. of Adm. Hrgs.,* 686 So. 2d 1349 (Fla. 1997), and to reduce the cost of malpractice insurance so doctors would not be forced from the practice of medicine. F. S. § 766.301(1); *Univ. of Miami v. Exposito ex rel Gonzalez,* 87 So. 3d 803, 805-06 (Fla. 3rd DCA 2012).  Plaintiffs also argue that like school districts that operate largely independently, *Lightfoot v. Hendry County School District,* 771 F. 3d 764, 778 (11th Cir. 2014), NICA was created by the state, but has significant independence. The NICA board approves its budget. *See, Harden v. Adams,* 760 F. 2d 1158, 1163 (11th Cir. 1985).   It can sue and be sued the same as a natural person. F.S. § 766.315(4)(f); *McAdams v. Jefferson County 911 Emerg. Comm. District,* 931 F. 3d 1132, 1135 (11th Cir. 2019).  NICA can sue for assessments in County Court. F.S. § 766.314(6)(b)(1).  The salaries of NICA employees are not listed on the state website [DE-39-5].  Defendants point out that Florida courts[5] and agencies[6] associate NICA with state activity.  On balance, the Court finds that this factor weighs in favor of the Relators.

### B. *What Degree of Control the State Maintains over the Entity*

Plaintiffs argue that the Board of Directors controls the decisions made by NICA. F.S. § 766.315 (4).[7] The Board has and exercises all powers necessary to effect any or all of the purposes for which the plan was created, F.S. § 766.315(4)(g).  However, Defendants argue that the directors are appointed by the Chief Financial Officer, F.S. § 766.315(c), but he must appoint from five different constituencies (although he can ignore the nominations) and he has no removal power.  Only the Florida Office of Insurance Regulation can change the assessments. F.

---

[5] *Samples v. Fla. Birth-Related Neurological Inj. Comp. Plan,* 114 So. 3d 912, 917 Fla. 20130; *Coy* at 945.
[6] Florida Department of Financial Services
[7] Including the power to sue and be sued F.S. ' 766.315(4)(f).

S. §766.314(7).   An administrative law judge determines the amount of the claims.  NICA must submit audited financial reports to the Legislature and Office of Insurance Regulation. F.S. § 766.315(5)(d).  In a non-binding private letter ruling, the IRS concluded that NICA is a division of the State and need not pay federal income tax [DE-43-8].  On balance, the Court finds that this factor does not weigh in favor of either Plaintiffs or Relators.

C.   <em>Where the Entity Obtains Funds</em>

Plaintiffs contend that NICA is funded primarily through investments that are under NICA's control.  The state's initial $20 million investment now forms a *de minimus* portion of its substantial assets.  Moreover, payments from participating obstetricians, midwives and hospitals seem more akin to insurance.  Plaintiffs contend that NICA receives the assessments directly from those who pay them, doctors, midwifes and hospitals, not from the state.  The Defendants rely on the assessment on non-participating doctors being considered as a tax within the meaning of Florida law.  *Coy v. Florida Birth Related Neurological Injury*, 595 So.2d 943, 945 (Fla. 1992).  Defendants counter that NICA does not have the authority to change the assessments. F.S. §766.314(7).  Regarding investments, Defendants show that the funds held on behalf of the Fund are considered funds of the State of Florida. F.S. § 766.315(5)(e).  Additionally, NICA must annually submit audited financial reports to the Legislature and Office of Insurance Regulation. F.S. § 766. 315(5)(d).   On balance, the Court finds this factor weighs in favor of Relators.

D.   <em>Who is Responsible for a Judgment Against the Entity</em>

NICA is almost completely responsible.  *See, U.S. ex rel Oberg v. Pa. Higher Educ. Assit. Agency,* 745 F. 3d 131, 138-139 (4th Cir. 2014).  Only if NICA becomes insolvent, then the

11

state is responsible, but only up to $20 million.  F.S. § 766.314(5)(b).  On balance the Court finds

that this factor weighs in favor of Relators.

Under the Eleventh Amendment arm of state analysis, the burden is on the Defendants, as

the entities invoking Eleventh Amendment immunity, to show that they are an arm of the state.

*Miller v. Advantage Behaviorial Health Systems*, 677 Fed. Appx. 556, 559 (11th Cir. 2017).

Defendants' arm of the state status relates not to its status in the abstract, but to its function or

role in a particular context. *Id.*  Here, Defendants' relevant function is payment of claims once an

eligibility determination has been made. Weighing the four *Manders* factors, the Court finds that

Relators have not shown that NICA is an arm of the state in this particular context.[8]

**Second**, Defendants contend that NICA does not qualify as a third-party under 42 U.S.C.

§ 1396a(a)(25)(A) and as such Plaintiff's cannot successfully plead that Defendants ever made or

caused to be made a claim that is actually false. Defendants argue it cannot be a third-party to

itself and it is not legally responsible for paying claims. Defendant argues that NICA, as a "State

entity" cannot be a "third-party," however, this argument is moot given the Court's discussion of

NICA's failure to qualify as an "arm of the state." The statute, 42 U.S.C. § 1396a, extends third-

party status to all parties that are, by statute, contract or agreement, legally responsible for

payment of a health care claim. 42 U.S.C. § 1396a(a)(25)(A); F.S. § 409.910(1). NICA clearly

falls under this provision. The Court is not persuaded by the 2014 DOAH *Williams* decision.[9]

Defendants point to the legislature's failure to pass legislation classifying NICA as a third-party,

---

[8] Had the Court ruled that NICA is an arm of the state and dismissed this case, it would seem that the United States could then file suit itself.

[9] *Williams v. Fla. Birth-Related Neurological Inj. Comp. Plan,* 2014 WL 4704711 *3 (DOAH 2014) did not explain why the exclusion would not be prohibited by federal law. A per curium affirmance does not lend much legitimacy to the decision. *Williams v. NICA,* 169 So. 3d 1170 (Fla. 1st DCA 2015).

but there can be many reasons why legislation fails to pass.  The Court finds that NICA is a third-party and not an arm of the state.

**Third**, Defendant argues that the Amended Complaint fails to allege a knowing violation. The element of knowledge can be satisfied by a reckless disregard. *U.S. ex rel Phalp v. Lincare Holdings, Inc.,* 857 F. 3d 1148, 1155 (11th Cir. 2017).  Plaintiffs argue that NICA's FY 2016-2017 financial statement is evidence of knowledge.  On August 31, 2018, the United States government settled a Virginia case against the Virginia Birth-Related Neurological Injury Compensation Program, a neurological birth injury fund similar to NICA. [DE-39-1].  NICA was aware of the ramifications of that lawsuit. [DE-39-3, pp. 8, 26-27].  Defendants complain that the complaint's conclusory allegations of knowledge are insufficient. Defendant cite to an absence of authoritative governmental warnings to NICA that it was violating federal law.  Here, there are sufficient circumstantial assertions that satisfy the knowledge element at this stage of the proceedings.

**Fourth**, Defendants complain[10] that the complaint fails to identify with particularity any false claims or unpaid obligations.  Rule 9 of the Federal Rules of Civil Procedure applies to FCA cases. *U.S. ex rel Clausen v. Lab. Corp. of Am., Inc.,* 290 F. 3d 1301, 1308 (11th Cir. 2002). Some indicia of reliability must be given in the complaint to support the allegation of an actual false claim. *Id,* at 1311.  Here, it is contended that the allegations do not satisfy the particularity requirement of Rule 9. *See, U.S. ex rel Chase v. Healthcare, Inc.,* 723 Fed. Appx. 783, 789 (11th Cir. 2018); *U.S. ex rel Mastej v. Health Management Assoc. Inc.,*591 Fed Appx 693, 704 (11th Cir. 2014).  However, the Court finds that paragraph 68 of the complaint gives enough indication of reliability to the claim.

---

[10] In their Reply, Defendants concentrated on the "arm of the state" issue, addressing briefly all the other issues, except Rule 9.

Wherefore, the Motion to Dismiss [DE-34] is **DENIED**.

Defendants shall file an answer to the complaint on or before **September 18, 2020**.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of September, 2020.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of Record